IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DALE WESLEY CHAPMAN | § | CASE NO. 19-70333 |
| | § | CHAPTER 7 |
| | § | |
| DEBTOR | § | JUDGE EDUARDO V. RODRIGUEZ |

| | | |
|---|---|---|
| CATHERINE STONE CURTIS, TRUSTEE | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | |
| | § | |
| THE CHAPMAN FAMILY TRUST, | § | ADV. NO. 20-07003 |
| HERBERT R. SCURLOCK, III, | § | |
| SHARI ANN MOORE, | § | |
| TARI A. GARCIA, TAMI J. | § | |
| ALBREKSTEN, THOMAS T. | § | |
| SCURLOCK AND LORI M. MARTIN | § | |
| | § | |
| Defendants | § | |

**TRUSTEE'S RESPONSE TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS**

**To the Honorable Eduardo V. Rodriguez,
United States Bankruptcy Judge**:

COMES NOW Catherine Stone Curtis ("Trustee"), Chapter 7 Trustee of the above-captioned main bankruptcy case and Plaintiff in the above-captioned adversary proceeding and responds to Defendants' 12(b)(6) Motion to Dismiss filed at Docket Number 5 (the "Motion to Dismiss") as follows:

1.  As alleged in the Trustee's Complaint [Docket Number 1], the Debtor had been previously married to Gloria Taylor Chapman, until her death in 2004. During their marriage, by document dated July 17, 2000, the Debtor and Mrs. Chapman created the Chapman Family Trust (the "Trust"). See ***Complaint, Exhibit B and C***. The primary asset of the Trust is a shopping mall in McAllen, Texas, which

had been owned by Colonial Village, Inc.[1] ("Colonial Village"), until July 1982, whereafter it was transferred to Mrs. Chapman (during her marriage to the Debtor and not as her sole and separate property). See *Complaint, Exhibit A*.  By deed dated June 20, 2000, pre-dating the creation of the Trust, but filed in the real property records of Hidalgo County, Texas on July 25, 2000, the real property on which the mall was constructed was conveyed to the Trust.  See *Complaint, Exhibit D*.

2. Herbert R. Scurlock, III, Shari Ann Moore, Tari A. Garcia, Tami J. Albreksten, Thomas T. Scurlock and Lori M. Martin (defined as the "Individual Defendants" in the Motion to Dismiss), being the biological children of Mrs. Chapman, but <u>not</u> the Debtor, are the remainder beneficiaries of the Trust.

3. Notwithstanding the fact that the Trust was a grantor trust (the Debtor and Mrs. Chapman were the settlors, beneficiaries and trustees of the Trust), the Debtor had certain rights including, but not limited to, the ability to utilize the income generated by the Trust for his own benefit. See *Complaint, Exhibit B and C*.

4. After Mrs. Chapman passed away, the Debtor was the sole trustee of the Trust and controlled its operations.  In June 2015, the Individual Defendants commenced litigation against the Debtor in state court in Case No. C-2462-15-F, *Herbert R. Scurlock, III et al. v. Dale Wesley Chapman et al.,* 332nd Judicial District of Hidalgo County, Texas (the "State Court Litigation"), alleging a variety of causes of action regarding the Debtor's misuse of the assets of the Trust.  See *Complaint, Exhibit E*.

5. On March 28, 2018, the Debtor filed for Chapter 11 relief in Case No. 18-70101 and then, in April 2018, removed the State Court Litigation to this Honorable Court.  ***Judicial Notice, Case No. 18-07006***.  Remand was sought by the Individual Defendants and, on June 8, 2018, an Order of Remand was entered.  ***Judicial Notice, Case No. 18-07006, Docket Number 20***.  Moreover, on June 20, 2018, an Order was entered dismissing Case No. 18-70101.  ***Judicial Notice, Case No. 18-70101, Docket Number 53***.

---

[1] Both the Debtor and Mrs. Chapman were officers of Colonial Village, as evidenced by the fact that they signed the deed conveying the mall property to Mrs. Chapman in their capacities as secretary and president, respectively.

The Individual Defendants were vigorous participates in all of the foregoing.

6.  On October 9, 2018, the Debtor executed a Settlement Agreement and Release involving himself, the Trust and the Individual Defendants. See ***Complaint, Exhibit H*** (the "Settlement Agreement"). Although the Trust is a party to this agreement is was not a signatory thereto. By way of summary only, the Settlement Agreement provided that the Debtor relinquished the following rights (hereafter the "Transfer"):

> Defendant hereby relinquishes and disclaims any and all interest (past, present, and future) he may have in the Chapman Family Trust, including but not limited to any asset of the Chapman Family Trust; provided, however, that the Defendant has the rights and interests described in "d," *infra*.

In exchange for the foregoing, the Debtor was to receive monthly payments of $4,500 from the Trust for the rest of his life and was released of certain monetary claims/judgments of the Individual Defendants, as well as being effectively indemnified for personal liability for taxes attributable to the Trust, if any.

7.  On August 22, 2019 (the "Petition Date"), the Debtor filed the instant Chapter 7 case.

8.  On July 7, 2020, the Trustee filed the above-referenced adversary proceeding alleging claims against the Individual Defendants and the Trust on the basis that the Transfer was an avoidable preference under 11 U.S.C. §§ 547, 550; an avoidable fraudulent transfer under 11 U.S.C. § 548, 550; an avoidable fraudulent transfer under Texas Business and Commerce Code 24.006(a) and § 24.008; and/or an avoidable fraudulent transfer under Texas Business and Commerce 24.006(b) and § 24.008.

9.  On August 21, 2020, the Individual Defendants and the Trust filed their Defendants' 12(b)(6) Motion to Dismiss at Docket Number 5, arguing:

   a.  That the preference claims against the Individual Defendants (but not the Trust) should be dismissed because, while the Transfer occurred within the 1-year period prior to the Petition Date, they were not 'relatives' of the Debtor and therefore cannot be statutory 'insiders', under 11 U.S.C. § 101;

   b.  That the preference claims against the Individual Defendants (but not the Trust) should be dismissed because, while the Transfer occurred within the 1-year period prior to the Petition Date, none of them had 'influence or control' over the Debtor such that they can be considered non-statutory insiders;

      c.      That there was no fraudulent transfer because the Transfer did not transfer property which would have become property of the estate and therefore there was no diminishment of the estate; and

      d.      That the Debtor received reasonably equivalent as a result of the Transfer.

*Insider Status*

10. Although the Individual Defendants seek dismissal of the Trustee's § 547 claims against them, the Trust does not appear to contest its status as an insider. As the Debtor was the sole trustee of the Trust at the time of the Transfer, the Trust was an insider. See *In re Prince* 2012 WL 1095506, 8 (Bkrtcy. E.D. Texas 2012), finding that trust of which the Debtor was a trustee was an insider under 11 U.S.C. § 101(31)(A).

11. Bankruptcy Code § 101(31) provides a non-exhaustive list of "*per se*" or "statutory insiders." When the debtor is an individual, the term "insider" specifically includes: (i) a relative of the debtor or of a general partner of the debtor, (ii) a partnership in which the debtor is a general partner, (iii) a general partner of the debtor, or (iv) a corporation of which the debtor is a director, officer, or person in control. See *In re Rexford Properties, LLC*, 557 B.R. 788, 794 (Bkrtcy C.D. California 2016). However, § 101(31) only utilizes the term "includes" and does not provide an exhaustive list of those parties whom are capable of being considered insiders. The Fifth Circuit in the case Matter of Holloway considered the following factors in evaluating the insider status of the parties involved in that case[2]:

(1) the closeness of the relationship between the transferee and the debtor; and

(2) whether the transactions between the transferee and the debtor were conducted at arm's length. See *Matter of Holloway*, 955 F.2d 1008, 1011 (5th Cir 1992).

12. At all times relevant, the Individual Defendants have been tied together with the Debtor, whether by marriage until the death of Gloria Chapman or thereafter by virtue of their respective economic and legal interests in the Trust. Specifically, the Individual Defendants are remainder beneficiaries of the

---

[2] The claims involved in that case arose under the Texas Uniform Fraudulent Transfer Act; however, the Fifth Circuit noted substantial similarities between the definition of the term insider under that act and § 101(31).

Trust and have been deadlocked with the Debtor for years prior to, and during, the State Court Litigation and through the settlement thereof.  Taken as true and to their plausible, logical conclusion, the Individual Defendants are insiders, whether *per se* or on a non-statutory basis because:

    a.    The Individual Defendants are insiders, *per se* and/or non-statutory, because of their beneficial interest in the Trust, which is itself an insider.  Statutory insider status by affiliation/derivation is expressly contemplated under § 101(31)(E), which provides that affiliates, or *insiders* of affiliates, are statutory insiders.  While the term "affiliate" is defined under § 101(2) to mean an entity or person with an ownership or control interest in the debtor, similar economic and legal interests exist as between the Individual Defendants and the Trust.  Moreover, the Individual Defendants closeness to the Debtor in terms of overlapping, perhaps even competing, economic interests constitutes good cause for their classification as non-statutory insiders as well, regardless of the tenor of their relationship;

    b.    The Individual Defendants seek to deny insider status on the basis that their relationship with the Debtor was bitter and contentious; however, a negative relationship does not preclude insider status.  Here the Individual Defendant's admit to negative relationship with the Debtor, whom regardless of culpability was elderly, after several years of litigation in both state and federal court, culminating in a settlement agreement whereby the Debtor ceded any interest in the Trust.  Such a transaction can easily and plausibly be viewed not as an arms-length transaction, but an arm-twisting one that warrants heightened scrutiny and non-statutory insider status. See for example *In re Tanner* 145 B.R. 672, 678 (Bkrtcy. W.D. Washington 1992), where the hostile relationship between debtor and former domestic partner was sufficient to warrant additional scrutiny and determination that pre-bankruptcy business not conducted as arms-length.

    ***Diminishment of the Estate***

13.    Defendants argue that the Trustee's fraudulent transfer claims (both under § 548 and § 24.001) should be dismissed because the Debtor had no rights to Trust property beyond funds for his care and support and that the spendthrift provision of the Trust prevents attachment of creditor rights.  The foregoing ignores the fact that (a) the Debtor had a community property interest in the real property/mall which was transferred into the Trust and (b) the Trust is a grantor trust due to the fact that the Debtor was a settlor, trustee and beneficiary of the Trust.  As alleged in the Trustee's complaint, both the Debtor and Gloria Chapman caused Colonial Village, the prior owner of the real property (which they controlled), to convey the shopping mall to Gloria at the time she was married to the Debtor (without any qualifying terms).  As the mall property was acquired during marriage, pursuant to Article 16 § 15 of the Texas Constitution, it is presumed to be community property absent clear and convincing evidence to the contrary.

Accordingly, the Debtor presumptively had a community property interest in the real property later used to capitalize the Trust. Furthermore, because the Debtor had an interest in the mall property, and was a settlor, trustee and beneficiary of the Trust, the spendthrift provision of the Trust does not bar his creditors rights in the property transferred into the Trust. See Texas Property Code § 112.035(d). Hence, the Debtor's relinquishment of his interest in the Trust and its property, which would have been property of the estate upon the bankruptcy filing, acted as a diminishment to the Estate. Although all the facts supporting the foregoing are affirmatively pled in the Trustee's Complaint, to the extent necessary, the Trustee requests leave to amend to add any request for declaratory relief required.

### *Reasonably Equivalent Value*

14.     Defendants argue that the Trustee's fraudulent transfer claims (both under § 548 and § 24.001) should be dismissed because the Debtor received reasonably equivalent value in the Settlement Agreement. Specifically, they point to the release of approximately $135,000 in judgments against the Debtor; his receipt of $4,500 per month from the Trust for life; and what amounted to indemnification for personal liability for any Trust related tax obligations (of which none are identified). As alleged in the Trustee's Complaint, the mall property conveyed to the Trust is worth millions of dollars. Moreover, as alleged in the Individual Defendants Second Amended Petition and Request for Removal of Trustee attached as Exhibit E to the Trustee's Complaint, the Individual Defendants allege: (a) the Trust generated approximately $1.372 million in income from 2004 to 2014 and (b) the Debtor purportedly directed approximately $2.5 million in funds to himself during the same time. As argued above, the Debtor has a community property interest in the mall property transferred to the Trust and that the Trust is a grantor trust. Given the foregoing allegations contained within the Trustee's complaint, and fact that they are considered to be true in the context of Rule 12(b)(6) motion, it is entirely plausible that the Debtor's did not receive reasonably equivalent value in return for relinquishment of his interest in the Trust and its property, given the multi-million dollar value of the income stream of and/or value of the underlying property of the Trust.

WHEREFORE based on the foregoing, the Trustee requests that the Defendants' 12(b)(6) Motion

to dismiss be denied and for such other and further relief to which entitlement may be shown.

                                      Respectfully submitted,

                                      */s/ Marc Douglas Myers*

                                      _____
Marc Douglas Myers
Ross, Banks, May, Cron & Cavin, P.C.
SBN 00797133
7700 San Felipe, Suite 550
Houston, Texas 77063
(713) 626-1200; (713) 623-6014 fax
mmyers@rossbanks.com
COUNSEL FOR THE TRUSTEE

## **CERTIFICATE OF SERVICE**

      I certify that on September 23, 2020, a true and correct copy of the foregoing was sent via the CM-ECF system to all parties of record.

                                      */s/ Marc Douglas Myers*

                                      _____
Marc Douglas Myers