

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXES
## MCALLEN DIVISION

ENTERED
03/05/2021

| | | |
|---|---|---|
| IN RE: | § | |
| DALE WESLEY CHAPMAN, | § | CASE NO: 19-70333 |
|     Debtor. | § | |
| | § | CHAPTER 7 |
| | § | |
| CATHERINE STONE CURTIS, | § | |
|     Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 20-7003 |
| | § | |
| THE CHAPMAN FAMILY TRUST | § | |
| and | § | |
| HERBERT R. SCURLOCK, III | § | |
| and | § | |
| SHARI ANN MOORE | § | |
| and | § | |
| TARI A. GARCIA | § | |
| and | § | |
| TAMI J. ALBREKSTEN | § | |
| and | § | |
| THOMAS T. SCURLOCK | § | |
| and | § | |
| LORI M. MARTIN, | § | |
|     Defendants. | | |

## <u>MEMORANDUM OPINION</u>

Catherine Stone Curtis, the chapter 7 Trustee, is seeking to set aside and recover alleged preferential fraudulent transfers from defendants Herbert R. Scurlock, III, Trustee of the Chapman Family Trust, Shari Ann Moore, Tari A. Garcia, Tami J. Albreksten, Thomas T. Scurlock and Lori M. Martin. Defendants collectively filed their motion and related supplement to their motion to dismiss the complaint for failure to state a claim pursuant to Federal Rule 12(b)(6). For the reasons stated herein, Defendants' motion and related supplement motion to dismiss is granted in part and denied in part.

The Court finds that both under Texas law and § 101(45) of the Bankruptcy Code,

Defendants are not relatives of the Debtor, and thus do not qualify as statutory per se insiders, but nevertheless qualify as "non-statutory insiders" under Counts I and V of the Amended Complaint. With respect to Counts II and IV, this Court finds that Plaintiff sufficiently pled facts that, if proven, establish (1) the existence of an antecedent debt under § 547 and Texas Business & Commerce Code § 24.006(b); and (2) that, as a result of a settlement agreement, the Debtor did not receive reasonably equivalent value as a matter of law.  Plaintiff is granted leave to amend her Complaint no later than March 22, 2021, to state facts in support her claims (1) that as to Count I, the alleged preferential transfer diminished or depleted the debtor's estate; and (2) with respect to Counts II and IV, under § 548 and Texas Business & Commerce Code § 24.006(a) as to reasonably equivalent value.  Failure to do so will result in dismissal of Counts I, II and IV without further orders of this Court.

## I.      Procedural History

Dale Wesley Chapman's ("*Debtor*") background and his relationship with the Defendants provide color to the present posture of this case.  The following are the relevant facts as set forth in Catherine Stone Curtis's ("*Plaintiff*") Amended Complaint and accompanying exhibits.[1]

1. On August 17, 1982, a deed dated July 30, 1982, was recorded in the Real Property Records of Hidalgo County, Texas, whereby real property and improvements described therein, used as a shopping mall in McAllen, Texas ("*Mall*"), was conveyed by Colonial Village, Inc., to Gloria. T. Chapman.[2]  At the time of the transfer of the Mall to Gloria T. Chapman, she was married to Debtor, the deed from Colonial Village, Inc. to Gloria T. Chapman identified Gloria T. Chapman as grantee,[3] and both Gloria T. Chapman and Debtor were control parties of Colonial Village, Inc., with Gloria T. Chapman being the President of that entity and Debtor being the Secretary.[4]

---

[1] Citations to the docket in this adversary proceeding 20-7003 (the "*Adversary Proceeding*"), shall take the form "ECF No. ——," while citations to Debtor's bankruptcy cases, 18-70101 and 19-70333, shall take the form "Bankr. ECF No. ——."
[2] ECF No. 15 at 3.
[3] *Id.* at 10.
[4] *Id*. at 4.

2. The Mall, once conveyed to Gloria. T. Chapman, became the sole management community property of Gloria. T. Chapman. Alternatively, the Mall became the joint management community property of the marital estate of the Debtor and Gloria. T. Chapman.[5]

3. Defendants Herbert R. Scurlock, III, Shari Ann Moore, Tari A. Garcia, Tami J. Albreksten, Thomas T. Scurlock and Lori M. Martin are the biological children of Gloria T. Chapman and were all relatives of the Debtor "by marriage."[6]

4. On July 17, 2000, by and through an instrument, Debtor and Gloria T. Chapman created the Chapman Family Trust.[7]

5. On July 25, 2000, a deed was recorded in the Real Property Records of Hidalgo County, Texas, whereby the Mall was conveyed to the Chapman Family Trust.[8]

6. On November 10, 2000, the Chapman Family Trust was amended.[9] Both Gloria T. Chapman and Debtor were Trustees and beneficiaries of the Chapman Family Trust.[10] Defendants were remainder beneficiaries of the Chapman Family Trust,[11] which includes a spendthrift clause.[12]

7. On January 6, 2004, Defendants' mother Gloria T. Chapman passed away.[13]

8. Debtor later remarried Barbara Ward.[14]

9. On June 15, 2015, Defendants filed suit against the Debtor individually and as trustee of the Chapman Family Trust in Cause No. C-2462-15-F, in the 332nd Judicial District Court of Hidalgo County, Texas (the "*State Court Lawsuit*"), seeking, among other things, monetary damages against the Debtor for the alleged breach of fiduciary duty and breach of trust, fraud, constructive fraud, conversion, and breach of contract.[15]

10. On March 29, 2018, Debtor's first bankruptcy case was filed ("*First Bankruptcy*").[16] Based on Debtor's disclosures in the First Bankruptcy case, his assets were valued at $509,346.62 with corresponding liabilities of $3,946,242.89.[17] Defendants had actual knowledge of the First Bankruptcy and were represented by counsel therein.[18]

---

[5] *Id.*
[6] *Id.* at ¶¶ 24–28.
[7] *See id.* at ¶ 16 (Plaintiff references Ex. B to the Complaint).
[8] *Id.*, Ex. D.
[9] *See id.* (Plaintiff cites to Ex. C of the Complaint).
[10] *Id.*
[11] *Id.* at ¶ 19.
[12] *Id.* at 17, Ex. B.
[13] *Id.* at 34.
[14] *Id.* at 225, Ex. I.
[15] *Id.* at ¶ 19; *see id.* at 34, Ex. E.
[16] ECF No. 15 ¶ 20.
[17] *Id.* at 5; *see* Exs. F, G.
[18] *Id.*

11. On April 2, 2018, Debtor removed the State Court Lawsuit to this Court and an adversary proceeding commenced.[19]

12. On April 18, 2018, Defendants filed a motion for relief from the automatic stay ("*Motion for Relief*"), and an accompanying motion for remand ("*Motion for Remand*").[20]

13. On June 8, 2018, the Motion for Relief was granted[21] and Adversary Proceeding No. 18-7006 was remanded back to State Court.[22]

14. On June 11, 2018, Debtor filed a voluntary motion to dismiss his chapter 11 proceeding.[23]

15. On June 20, 2018, Debtor's First Bankruptcy case was dismissed with prejudice for refiling for a period of one year by order of this court.[24]

16. On October 9, 2018, Defendants settled with Debtor ("*Settlement Agreement*").[25]  The Settlement Agreement provides, inter alia, that Debtor:

   (i)     relinquishes and disclaims any and all interest in the Chapman Family Trust
   (ii)    resigns and withdraws as Trustee/Co-Trustee of the Chapman Family Trust
   (iii)   receives guaranteed payments in the amount of $4,500 a month for the remainder of his life
   (iv)    is released from all liability in relation to the judgment obtained against him in Bankruptcy Court in the amount of $20,000
   (v)     is released from all liability arising from the District Court's Order compelling Defendant to reimburse the Chapman Family Trust for 2017 property taxes in the amount of $92,000
   (vi)    is released from all liability arising from the District Court's Order compelling Defendant to reimburse the Chapman Family Trust for the security deposits in the amount of $23,810.
   (vii)   Herbert R. Scurlock, III became the Trustee of the Chapman Family Trust.

17. On December 6, 2018, Debtor filed a Motion to Reopen the First Bankruptcy for the limited purpose of introducing his Motion to Clarify and Alternatively to Partially Modify the Order of Dismissal with Prejudice to Refilling for 365 days.[26]

18. On January 9, 2019, this Court held a hearing and granted the motion, allowing Debtor to file a chapter 7 or 13 bankruptcy.[27]

---

[19] Case No. 18-7006, ECF No. 1.
[20] Bankr. 18-70101, ECF No. 13; Case No. 18-7006, ECF No. 3.
[21] Bankr. 18-70101, ECF No. 32.
[22] Case No. 18-7006, ECF Nos. 20–21.
[23] Bankr. 18-70101, ECF No. 34.
[24] Bankr. 18-70101, ECF No. 53.
[25] ECF No. 15.
[26] Case No. 18-70101, ECF Nos. 53, 73.
[27] *Id.* at 73.

19. On August 22, 2019, Debtor filed the instant chapter 7 bankruptcy case.[28] Prior to execution/consummation of the Settlement Agreement, the Debtor had a financial interest in the Chapman Family Trust.[29]  On the Petition Date, the Debtor's schedules indicated that his assets were valued at $86,465.97 with corresponding liabilities of $134,217.69.[30]

20. On July 7, 2020, (320 days later) Plaintiff filed a complaint ("*Complaint*") against The Chapman Family Trust ("*Defendant Chapman Family Trust*"), Herbert R. Scurlock, III, Shari Ann Moore, Tari A. Garcia, Tami J. Albreksten, Thomas T. Scurlock and Lori M. Martin ("*Defendants*").[31]

21. On August 14, 2020, Debtor died.[32]

22. On August 21, 2020, all of the Defendants filed a motion to dismiss the Complaint ("*Motion to Dismiss*") because, according to Defendants, the Complaint fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).[33]

23. On September 23, 2020, Plaintiff filed her Response to Defendants' Motion to Dismiss ("*Response*").[34]

24. On November 17, 2020, this Court held a hearing on the Motion to Dismiss.[35]  At the conclusion of the hearing the Court took the matter under advisement and ordered briefing on the issue of whether a trust (here, the Chapman Family Trust) could be sued.[36]

25. Prior to filing a brief on this narrow issue, on December 4, 2020, Plaintiff filed a First Amended Complaint ("*Amended Complaint*").[37]  In the Amended Complaint, Plaintiff substitutes "The Chapman Family Trust" for "Herbert R. Scurlock, III, Trustee of the Chapman Family Trust."[38]   Plaintiff pled the following five causes of action:

    a. Count I - 11 U.S.C. § 547 - preferential transfer claim;
    b. Count II - 11 U.S.C. § 548 - fraudulent transfer claim;
    c. Count III - 11 U.S.C. § 550 - recovery of avoided transfer under §§ 547 and 548;
    d. Count IV- Texas Business & Commerce Code § 24.006(a) and § 24.008 - recovery of fraudulent transfer; and

---

[28] ECF No. 1.

[29] ECF No. 15 at 5.

[30] *Id.*, Ex. I.

[31] ECF No. 1.

[32] Bankr. 19-70333, ECF No. 66.

[33] ECF No. 5.

[34] ECF No. 9.

[35] ECF No. 13.

[36] *See Ray Malooly Tr. v. Juhl*, 186 S.W.3d 568, 571 (Tex. 2006); *see also Americold Realty Trust v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1016 (2016) (The United States Supreme Court has held that traditionally, a trust is not considered a distinct legal entity, but rather it is a fiduciary relationship between multiple parties. The same has been held by the Texas Supreme Court. Because a trust is considered a relationship, rather than a legal entity, a trust cannot sue nor be sued.).

[37] ECF No. 15.

[38] *Id.* (While it was unclear whether Chapman Family Trust may be sued, its legal representative may be sued).

e.  Count V - Texas Business & Commerce Code § 24.006(b) and § 24.008 - recovery of fraudulent transfer.

26. On December 7, 2020, Defendants filed a statement to supplement their Motion to Dismiss.[39]

27. On December 8, 2020, Plaintiff filed her response.[40]

## II.  Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11 or arising in or related to cases under title 11."  An adversary proceeding falls within the Court's "related to" jurisdiction if the "outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[41]  Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[42] This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A), (F) and (H) this is a core matter as it "concern[s] the administration of the estate and proceedings to avoid and recover preferences and fraudulent conveyances."[43]

Furthermore, this Court may only hear a case in which venue is proper.[44]  Pursuant to 28 U.S.C. § 1409(a), "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."  Debtor's main chapter 7 case is presently pending in this Court and therefore, venue of this adversary proceeding is

---

[39] ECF No. 16.

[40] ECF No. 18.

[41] *In re Trevino*, 535 B.R. 110, 125 (Bankr. S.D. Tex. 2015) (quoting *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 93 (5th Cir. 1987).

[42] 28 U.S.C. § 157(a); *see also* In re Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).

[43] 11 U.S.C. § 157(b)(2); s*ee also In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.").

[44] 28 U.S.C. § 1408.

proper.

### III.     Analysis

#### A.  Standard of Review for Motions to Dismiss Under Federal Rules of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must clear two hurdles.  First, the complaint must describe the claim in enough detail to give fair notice of the claim and the grounds for it.[45]  "[A] formulaic recitation of the elements of a cause of action will not do."[46]  Specifics are unnecessary, but some facts must support each element.[47] Second, the complaint must state a claim "plausible on its face,"[48] meaning the plaintiff's right to relief must rise above a "speculative level."[49]  Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."[50]  In *Ashcroft v. Iqbal*, the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts . . . permit the court to infer more than the mere possibility of misconduct."[51]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[52]  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[53]

Motions to dismiss are disfavored and thus, rarely granted.[54]  When considering a motion

---

[45] *See* Fed. R. Civ. P. 8(a) (made applicable by Fed. R. Bankr. P. 7008).
[46] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).
[47] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).
[48] *Twombly*, 550 U.S. at 570.
[49] *Id.* at 555.
[50] Fed. R. Civ. P. 8(a).
[51] 556 U.S. 662, 679, (2009) (quoting Rule 8(a)(2)).
[52] *Iqbal*, 556 U.S. at 678.
[53] *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) ("A complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true raise a right to relief above the speculative level.") (citations omitted).
[54] *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).

to dismiss under Rule 12(b)(6), courts accept well-pleaded allegations as true and liberally construe the complaint in favor of the plaintiff.[55]  This Court reviews motions under Rule 12(b)(6) by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs."[56]  When considering a motion to dismiss under Rule 12(b)(6), the Court must assess the legal feasibility of the complaint, not weigh the evidence that might be offered in its support.[57]  The Court's consideration "is limited to facts stated on the face of the complaint and in the documents appended to the complaint or incorporated in the complaint by reference, as well as to matters of which judicial notice may be taken."[58]  And although this Court "will not strain to find inferences favorable to the plaintiff[]],"[59] the facts need only be sufficient "for an inference to be drawn that the elements of the claim exist."[60]  To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must meet Rule 8(a)(2)'s pleading requirements.

Normally, in ruling on a Rule 12(b)(6) motion to dismiss, the Court cannot look beyond the pleadings, and must "accept[] as true those well-pleaded factual allegations in the complaint."[61]  In addition to facts alleged in the pleadings, however, the Court "may also consider matters of which [it] may take judicial notice."[62]  Additionally, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."[63]

## B.  Trustee's Request for Leave to Amend Complaint

---

[55] *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986).

[56] *Stokes v. Gann*, 498 F. 3d 483, 484 (5th Cir. 2007) (per curiam).

[57] *Koppel v. 4987 Corp.,* 167 F.3d 125, 133 (2d Cir. 1999).

[58] *Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir. 1993).

[59] *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.,* 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

[60] *See Harris v. Fidelity Nat'l Info. Serv* (*In re Harris*), Nos. 03-44826, 08-3014, 2008 Bankr. LEXIS 1072 at *11 (Bankr. S.D. Tex. Apr. 4, 2008) (citing *to Walker v. South Cent. Bell Tel. Co*., 904 F2d 275, 277 (5th Cir. 1990)).

[61] *Hall v. Hodgkins*, 305 F. App'x. 224, 227–28 (5th Cir. 2008); *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994); *Test Masters Educ. Serv., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).

[62] *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996); *see* Fed. R. Evid. 201(f) ("Judicial notice may be taken at any stage of the proceeding.").

[63] *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007); *see also Cinel*, 15 F.3d at 1343 n. 6 ("In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record.").

Rule 15 governs motions to amend a complaint made before trial and provides that "[t]he court should freely give leave when justice so requires."[64]  The Fifth Circuit observed that "Rule 15(a) 'evinces a bias in favor of granting leave to amend.'"[65]  Under Rule 15(a)(1), Trustee had 21 days after the Defendants filed their Rule 12(b)(6) Motion to amend her Complaint without consent from the Defendants or a grant of leave from this Court.[66]  Because that deadline passed, Plaintiff must request leave and "leave shall be freely given [if] justice so requires."[67]  Absent a formal motion for leave, a requesting party must set forth with particularity the grounds for the amendment and the relief sought."[68]  This requires a movant to give the court some notice of the nature of his proposed amendments.[69]  Although no strict guidelines exist as to what constitutes a sufficient request for leave to amend, it is clear that some specificity is required.[70]  "If proper notice was given, the court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment when deciding whether to grant leave to amend."

Here, Plaintiff first requested leave in her reply to the Defendants' Motion to Dismiss. Plaintiff stated that "[a]lthough all the facts supporting the foregoing are affirmatively pled in the Trustee's Complaint, to the extent necessary, the Trustee requests leave to amend to add any request for declaratory relief required."[71]  Next, on November 17, 2020, Plaintiff orally requested

---

[64] FED. R. CIV. P. 15(a)(2).
[65] *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566 (5th Cir. 2002) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).
[66] FED. R. CIV. P. 15(a)(1).
[67] FED R. CIV. P. 15(a)(2).
[68] *United States ex. rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330–31 (5th Cir. 2003) (quoting *United States ex re. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 386–87 (5th Cir. 2003)).
[69] *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016).
[70] *Id.* at 590.
[71] ECF No. 15.

leave to amend her Complaint if necessary.[72]  As such, the Court finds that Defendants were on adequate notice that Plaintiff may further amend her Complaint.  Since only one previous amendment has been made to remove the Chapman Family Trust as a named defendant, there is no undue prejudice to Defendants.  As discussed herein, Plaintiff's request for leave to amend would cure deficiencies without bringing any new claims.  Additionally, no evidence demonstrates that Plaintiff's motion for leave was in bad faith or dilatory conduct.  Finally, to determine whether the amendment would be futile, courts apply "the same standard of legal sufficiency as applies under Rule 12(b)(6)."[73]  In order to state a claim under Rule 12(b)(6), a plaintiff must meet Rule 8(a)(2)'s pleading requirements.  Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Ashcroft v. Iqbal*, the Supreme court held that Rule 8(a)(2) requires that "well-pleaded facts" must "permit the court to infer more than a mere possibility of misconduct."[74]  Because amendments to Plaintiff's Complaint would only add additional support for her claims putting Defendants on further notice and no new claims would be brought, the Court determines that amendments made by Plaintiff would not be futile where applicable.  Accordingly, while each factor weighs in favor of granting leave to amend, the Court's determination as to whether leave to amend is necessary and if justice requires is discussed herein.

### C.  Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6)

In light of causes of action set forth in Plaintiff's Amended Complaint, Defendants, in their Motion and their related Supplement to their Motion to Dismiss, assert four grounds for dismissal, to wit: (1) Defendants are not insiders of the Debtor; (2) the Complaint fails to plead facts to

---

[72] Min. Entry 11/17/2020.
[73] *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) (quotation omitted).
[74] *Iqbal*, 556 U.S. at 679.

support the existence of an antecedent debt; (3) the alleged transfer did not result in Defendants receiving more than they would have if the case proceeded to chapter 7 and the bankruptcy estate was not diminished by the alleged transfer; and (4) the Debtor received reasonably equivalent value as a matter of law.

The Court notes that while Defendants do not explicitly complain about Count III, § 550 prescribes the rights and liabilities of a transferee of an avoided transfer and authorizes the trustee to recover the property or value of the property transferred under §§ 547 and 548.[75]  Accordingly, the Court will evaluate Count III with respect to Counts I and II.  The Court will next address each of Defendants' legal arguments in turn.

### 1.  Whether Defendants are "Insiders" of the Debtor

First, Defendants attack Counts I and V of Plaintiff's Complaint, arguing that Plaintiff's preference claim and the claim under Texas Uniform Fraudulent Transfer Act ("*TUFTA*") § 24.006(b) were untimely filed and must be dismissed, as the alleged preferential transfer occurred more than 90 days before the petition date and none of the Defendants were "insiders" of Debtor (who is their deceased mother's widower), on the date of the alleged preferential transfer. Additionally, Defendants argue that their affinity with the Debtor terminated in 2004 upon the passing of Gloria T. Chapman, Debtor's former spouse and Defendants' mother.[76]  Defendants further argue that ". . . because it was almost 15 years since their mother had passed, Debtor had remarried, and given the extensive pre bankruptcy litigation between Defendants and Debtor, it is simply impossible for Plaintiff to prove in this case the alternate 'control or influence' tests for insider status."[77]

---

[75] 11 U.S.C. § 550(a).
[76] ECF No. 5 at 1.
[77] *Id.* at 2.

Plaintiff's Counts I and V of the Amended Complaint include, respectively, a preferential transfer claim under 11 U.S.C. § 547 and fraudulent transfer claims under Texas Business & Commerce Code § 24.006.  Pursuant to § 547(b), the trustee may avoid a preferential transfer of an interest of the debtor in property–

(1) to or for the benefit of a creditor;

. . .

(4) made–

      (A) on or within 90 days before the date of the filing of the petition; or

      (B) between ninety days and one year before the date of the filing of the petition, *if such creditor at the time of such transfer was an insider*.[78]

Plaintiff must prove each element of § 547(b) in order to prevail.[79]

Under Texas Business & Commerce Code § 24.006(b), "a transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the *transfer was made to an insider . . . .*"  Further, a cause of action under § 24.006 with respect to fraudulent transfer must be brought within one year after the transfer was made.[80]

In their Motion to Dismiss, Defendants contend that the limitations on these claims was on or within 90 days of Debtor's chapter 7 petition under § 547(b)(4)(A).  Recall that the "transfer" was made on October 9, 2018, when Debtor and Defendants entered into the Settlement Agreement whereby Debtor relinquished and disclaimed all interests in the Chapman Family Trust.[81]  Debtor filed bankruptcy on August 22, 2019.  Thus, the transfer was made within a year, but to survive

---

[78] 11 U.S.C. § 547(b) (emphasis added).
[79] *In re Studdard*, 2007 WL 2254332, at *5 (Bankr. N.D. Miss. Aug. 2, 2007).
[80] TEX. BUS. & COM. CODE ANN. § 24.010 (West); *see In re Northstar Offshore Grp.*, LLC, 616 B.R. 695, 737 (Bankr. S.D. Tex. 2020).
[81] ECF No. 1, Ex. 11.

dismissal, the transfer must have been made to an insider under § 24.006 or § 547(b)(4)(A).  As such, Defendants argue that because Defendants were not insiders, Plaintiff's claims were untimely filed and must be dismissed where the transfer occurred more than 90 days before the petition date.[82]

Resolution of this portion of Defendants' Motion to Dismiss comes down to whether Defendants, including Herbert R. Scurlock, III, Trustee of the Chapman Family Trust, were "insiders."  The term "insider" can be characterized in two ways: (i) statutory per se insiders; and (ii) non-statutory insiders that do not deal at arm's length.[83]  Plaintiff pled that "[a]t the time of the Transfer the Defendants were insiders, statutory and/or non-statutory, of the Debtor."[84]  As such, the Court must analyze each and begins its discussion with statutory per se insider status.

### a.  Statutory Per se Insider Status

A statutory per se insider is of the kind listed under the Code.[85]  Section 101(31)[86] sets forth:

(31) The term "insider" includes—

(A) if the debtor is an individual—

(i) relative of the debtor or of a general partner of the debtor;

(ii) partnership in which the debtor is a general partner;

(iii) general partner of the debtor; or

---

[82] ECF Nos. 5, 16.

[83] *In re Smith*, 415 B.R. 222 (Bankr. N.D. Tex. 2009).

[84] ECF No. 15 (Plaintiff contends that "[s]tatutory insider status by affiliation/derivation is expressly contemplated under § 101(31)(E), which provides that affiliates, or insiders of affiliates, are statutory per se insiders. While the term "affiliate" is defined under § 101(2) to mean an entity or person with an ownership or control interest in the debtor, similar economic and legal interests exist as between the Individual Defendants and the Trust."  Since § 101(31) requires that Defendants be *insiders* of an affiliate, the analysis still requires a finding that Defendants are insiders. As beneficiaries, Defendants are not themselves affiliates.).

[85] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.

[86] The definition under 11 U.S.C. § 101(31) defines "insider" as it applies to 11 U.S.C. § 547.

(iv) corporation of which the debtor is a director, officer, or person in control.[87]

Under the Code, the term "relative" means "individual related by affinity or consanguinity within the third degree as determined by the common law, or individual in a step or adoptive relationship within such third degree.[88]  Next, as it relates to Plaintiff's fraudulent transfer claim brought under Texas state law, Texas Business & Commerce Code § 24.002 delineates that:

(7) "Insider" *includes:*

(A) if the debtor is an individual:

(i) a relative of the debtor or of a general partner of the debtor;

(ii) a partnership in which the debtor is a general partner;

(iii) a general partner in a partnership described in Subparagraph (ii) of this paragraph; or

(iv) a corporation of which the debtor is a director, officer, or person in control.[89]

Under § 24.002(11), "relative" means "an individual related by consanguinity within the third degree as determined by the common law, a spouse, or an individual related to a spouse within the third degree as so determined, and includes an individual in an adoptive relationship within the third degree."[90]

Before launching into the discussion, it must be addressed that in Defendants' statement to supplement their Motion to Dismiss, Defendants point out that the Chapman Family Trust itself cannot be an "insider" to the Debtor because the Chapman Family Trust is not an independent party that can be sued.[91]  As alleged in the Amended Complaint, the individuals that matter for the

---

[87] 11 U.S.C. § 101(31).
[88] 11 U.S.C. § 101(45).
[89] Tex. Bus. Com. Code Ann. § 24.002(7) (emphasis added).
[90] Tex. Bus. & Com. Code Ann. § 24.002(11) (West).
[91] ECF No. 16.

purposes of determining insider status are the Defendants.[92]  Therefore, while both Defendants and

Plaintiff analyze *In re Prince* for its determination that a trust was an insider, that issue need not

be decided in light of Plaintiff's Amended Complaint.  The Court now evaluates whether Defend-

ants are statutory per se insiders.

Here, taken as true and as pled by Plaintiff, Gloria T. Chapman is the Defendants' mother

and the Debtor's former spouse, making Defendants children of the Debtor by marriage.[93]  There-

fore, Defendants are related to Debtor within the third degree, squarely fitting within the defini-

tions of "relative."  As such, at first blush it appears Defendants earn statutory per se insider status

under § 547 and § 24.006; however, Defendants protest.

Although Defendants do not explicitly make the statutory v. non-statutory distinction, they

do argue that they cannot be "relatives" of the Debtor for purposes of § 547 and § 24.006 because

their affinity with the Debtor terminated upon the death of Gloria T. Chapman in 2004.[94]  Defend-

ants cite to the Fifth Circuit's *Matter of Holloway* decision.[95]  In that case, the Fifth Circuit (citing

to the bankruptcy court's holding) found that a former spouse was not an insider because her af-

finity with the debtor terminated upon divorce.[96]  The Fifth Circuit noted that "divorce terminates

the marital relation."[97]  Defendants argue that that "the death of the spouse clearly has the same

impact" and consequently, their status as "relatives" ended upon the death of their mother, Gloria

T. Chapman, in 2004.[98]  The question of whether stepchildren remain "relatives" of a former

---

[92] ECF Nos. 15, 16.

[93] ECF No. 15 at 5.

[94] ECF No. 5.

[95] *Matter of Holloway*, 955 F.2d 1008 (5th Cir. 1992).

[96] *Id.* at 1010 (5th Cir. 1992) (The Fifth Circuit reversed the decision of the bankruptcy court; however, the Fifth's Circuits decision does not impact this finding.  The case was reversed on different grounds.  The proposition that divorce terminated the former spouse's status as a "relative" meant that she was not a statutory per se insider, but the bankruptcy court failed to analyze whether she was a non-statutory insider.).

[97] *Id.*

[98] *Id.*; ECF No. 5.

spouse following the death of a biological parent for purposes of 11 U.S.C. § 101(31) and Texas

Business & Commerce Code § 24.002(11) has yet to be addressed within the Fifth Circuit.

### i. Whether stepchildren are relatives of a former spouse following the death of their biological parent under Texas law

The Court first examines Texas law on the issue.  In *Pomerantz v. Rosenberg*, the court

held that "[a]ffinity relationships arise out of marriage and may be terminated by death . . . [and]

[t]his relationship is also terminated upon the death of a spouse, unless live issue was born of the

marriage and are still living."[99]  Similarly, in *Lewis v. O'Hair*, the court held that "[d]eath of a

spouse terminates relationship by affinity, but if the marriage has resulted in issue who are still

living the relationship by affinity continues."[100]  Looking to Texas statutes that speak on affinity

relationships, § 573.024 of the Government Code sets forth that "[t]he ending of a marriage by

divorce or the death of a spouse ends relationships by affinity created by that marriage unless a

child of that marriage is living, in which case the marriage is considered to continue as long as a

child of that marriage lives."[101]  This is echoed in § 71.003 of the Texas Family Code where "'fam-

ily' includes individuals related by consanguinity or affinity, as determined under Section[]

573.024 [of the] Government Code. . . ."[102]

Considering the case law and authority cited *supra*, this Court finds that Defendants' con-

tention is correct under Texas law.  Here, Defendants were not born of the marriage.  The marriage

between Debtor and Gloria T. Chapman did not result in children; Defendants were biological

children only of Gloria T. Chapman.  When Gloria T. Chapman died in 2004 her marriage and

---

[99] *Pomerantz v. Rosenberg*, 593 S.W.2d 815, 817 (Tex. Civ. App. 1980).
[100] *Lewis v. O'Hair*, 130 S.W.2d 379 (Tex. Civ. App. 1939).
[101] Tex. Gov't Code Ann. § 573.024 (West).
[102] Tex. Fam. Code Ann. § 71.003 (West) ("'Family' includes individuals related by consanguinity or affinity, as determined under Sections 573.022 and 573.024, Government Code, individuals who are former spouses of each other, individuals who are the parents of the same child, without regard to marriage, and a foster child and foster parent, without regard to whether those individuals reside together.").

relationship by affinity with Debtor ceased.  Consequently, pursuant to Texas law, Defendants'

relationship by affinity with Debtor also ceased to exist.

Moreover, the case law does not contemplate the inclusion of "stepchildren" as relatives of

a former spouse.[103]  The language specifically refers to children "born of the marriage" and "if the

marriage resulted in issue."[104]  Additionally, it is appropriate to bring consistency to the interpre-

tation of Texas statutes that touch on the same issues unless otherwise directed.  Upon a plain

reading of § 573.024 of the Government Code, it is clear that death of a spouse terminates the

relationship of affinity with the former spouse unless a "child *of that marriage*" lives.[105]  As

§ 24.002(11) is silent as to what occurs to the relationship of affinity upon the death of a former

spouse, this Court will not construe it in a way that conflicts with existing case law and aforemen-

tioned Texas statutes on the issue.[106]  Accordingly, the Court finds that under Texas law, Defend-

ants are not relatives of the Debtor, and thus do not qualify as statutory per se insiders under Count

V of the Complaint.

### ii.  Whether stepchildren are relatives of a former spouse following the death of their biological parent under the Bankruptcy Code

The Court next turns its attention to whether Defendants are "relatives" under the Code.

In *In re Ribcke*, the trustee brought an action under § 547 against the debtor's deceased wife's

parents to recover a conveyance of real property by the debtor to them within one year before the

filing of a Chapter 7 petition.  There, the bankruptcy court held that the death of the debtor's wife

did not terminate the relationship of affinity between her parents and the debtor "because of the

fact that a child survived."[107]  That same case also recognized that "[l]ikewise, in cases dealing

---

[103] *See Pomerantz v. Rosenberg*, 593 S.W.2d at 817; *see also Lewis v. O'Hair*, 130 S.W.2d at 379.
[104] *Id.*
[105] Tex. Gov't Code Ann. § 573.024 (West) (emphasis added).
[106] *See Pomerantz v. Rosenberg*, 593 S.W.2d at 817; *see also Lewis v. O'Hair*, 130 S.W.2d at 379.
[107] *In re Ribcke*, 64 B.R. 663, 666 (Bankr. D. Md. 1986).

with assessment of inheritance taxes where there are surviving children of the marriage, it is generally held that the relationship of affinity is not terminated by the death of the parent."[108]  In *In re Winn*, the chapter 7 trustee sought to recover allegedly preferential payments made to debtor's former father-in-law.[109]  In that case, the bankruptcy court determined that the doctrine of "affinity" would regard one spouse's father-in-law as that party's father for purposes of the statutory definition of insider as including relative related by affinity because the debtor and father-in-law's daughter remained married at the time of the alleged transfer.[110]  The court stated that the existing marriage at the time of the transfer "trapped [father-in-law] in the category of insider."[111]  As a result, the bankruptcy court held that the trustee could seek to avoid any transfers made to the father-in-law within one-year prior to the debtor filing his petition.[112]

Moreover, with respect to a "relative" under § 547, legislative history states that "a former spouse is not a relative, but if, [for purposes of section 547], the transferee was a spouse of the debtor at the time of the transfer sought to be avoided, then the transferee would be [a] relative and subject to the insider rules."[113]  Collier states that some courts have interpreted "within the third degree as determined by the common law" contained in § 101(45) to refer to the applicable state's canon or civil law.[114]

Although federal guidance on the issue is scarce, this Court finds that § 101(45) renders the same result as that produced by state law.  While § 101(45) brings Defendants within the

---

[108] *Id.* (citing Lavieri, *Executor v. Commissioner of Revenue Services*, 184 Conn. 380, 439 A.2d 1012, 1015 (1981); *Depositors Trust Company of Augusta v. Johnson*, 222 A.2d 49, 52 (Me.1966)).

[109] *In re Winn*, 127 B.R. 697 (Bankr. N.D. Fla. 1991).

[110] *Id.*

[111] *Id.* at 699.

[112] *Id.*

[113] H.R. Rep. No. 95-595, at 313 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6270; S. Rep. No. 95-989, at 26 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5811; *see Doeling v. O'Neill*, 550 B.R. 482, 516, 2016 Bankr. LEXIS 1771, *75-76.

[114] 2 Collier on Bankruptcy P 101.45 (16th 2020).

meaning of "relative," it is similarly silent on the question of what occurs to the affinity relationship upon death of a parent and former spouse. Despite its non-binding nature, the little authority that does exist references the same "children of the marriage" language in the context of § 547. This interpretation is also consistent with Texas law as describe above. As such, the Court finds that Defendants are not relatives of Debtor under § 101(45), and do not qualify as statutory per se insiders under Count I of the Complaint. But the inquiry does not end here. As discussed at-length below, Defendants may still qualify as non-statutory insiders. The existence and development of non-statutory insider status exists for situations such as this—where a party may not fall into an enumerated category, courts have developed factors in the spirit of the Code to encompass parties that, for all intents and purposes, are insiders.

### b.   Whether Defendants Nevertheless Qualify for Non-Statutory Insider Status

Persons not included in the statutory list of "insiders" provided in § 101(31) may nonetheless qualify as a "non-statutory insider" under certain circumstances.[115] The list is non-exclusive and courts have designated entities not listed in § 101(31) as non-statutory insiders. As explained in COLLIER, the Code's definition of "insider" is "one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor."[116] Factors to consider in determining non-statutory "insider" status for purposes of setting aside a transaction include: (1) closeness of relationship between transferee and debtor; and (2) whether transactions between transferee and debtor were conducted at arm's length.[117] The Court will now examine whether Defendants may nevertheless qualify as non-statutory insiders under the two factors set forth above.

---

[115] 11 U.S.C.A. § 101(31); *see In re Acis Capital Mgmt., L.P.*, 604 B.R. 484 (N.D. Tex. 2019).
[116] 5 Collier on Bankruptcy P 547.03 (16th 2020).
[117] *Matter of Holloway*, 955 F.2d at 1008.

> **i.  Whether there is a closeness of relationship between Defendants and Debtor**

First, Plaintiff contends, and this Court agrees, that Defendants hold a sufficiently close relationship with Debtor to be considered insiders.  The parties here were formerly bound together by the Debtor's marriage to Defendants' mother Gloria T. Chapman, the contractual bonds of the Chapman Family Trust, and the fiduciary and economic relationships created thereby.  Specifically, the preamble paragraph of the Settlement Agreement sets forth the relationship of the parties to one another with (a) Mr. Herbert Scurlock joining the agreement in his capacity as a beneficiary and Co-Trustee of the Chapman Family Trust, (b) the Debtor in his capacity as beneficiary and Co-Trustee, (c) Ms. Moore, Ms. Albreksten, Ms. Martin and Mr. Thomas Scurlock joining in their capacities as beneficiaries and (d) the Chapman Family Trust entering into the agreement through its Trustees as follows:

> This Settlement Agreement (the "Agreement") is entered into this ___ of , 2018 ("Effective Date") by and between Herbert R. Scurlock, III, Shari Ann Moore, Tari A. Garcia, Tami J. Albreksten, Thomas T. Scurlock, and Lori M. Martin (collectively, the "Plaintiffs") hereby enter this Agreement in their individual capacities and also in their capacities as beneficiaries of the Chapman Family Trust and Herbert R. Scurlock, III additionally enters this Agreement in his capacity as Co-Trustee of the Chapman Family Trust, and Dale Wesley Chapman, in his individual capacity, in his capacity as an alleged beneficiary, and in his capacity as Trustee/Co-Trustee of the Chapman Family Trust ("Defendant").[118]

Upon settlement, the Debtor's interest in the Chapman Family Trust was transferred to Herbert R. Scurlock, III, as Co-Trustee Herbert Scurlock for his benefit and the benefit of the other Defendants.  Taken as true, Debtor had a community property interest in the real property/Mall with Gloria T. Chapman which was transferred into the Chapman Family Trust.  As such, this Court determines that Defendants have a sufficiently close relationship with the Debtor and this factor is satisfied.

> **ii.  Whether transactions between Defendants and Debtor were conducted at arm's length**

---

[118] ECF No. 15.

As stated earlier,  Defendants assert that Plaintiff  cannot prevail on any attempt to show that the Defendants are nevertheless insiders due to their inability to exert control or influence over the Debtor.[119]  As set forth above, the second factor in determining insider status is whether transactions between transferee and debtor were conducted at arm's length.[120]  An arm's length transaction is one between two unrelated and unaffiliated parties or between two parties, however closely related, conducted as if the parties were strangers, so that no conflict of interest arises.[121] A transferee "is an insider if, as a matter of fact, he exercises such control or influence over the debtor as to render their transaction not arm's length.[122]

With respect to the arm's length factor, Defendants contend that the parties were not close, and they were bitter adversaries in litigation.[123]  They point out that the Settlement Agreement was almost 15 years after their mother had passed, and the Debtor had later remarried.[124]  Defendants assert that the settlement of litigation with each side represented by counsel and a formal settlement agreement is conclusive proof that the transaction between them was conducted at arm's length.[125] In response, Plaintiff argues that a negative relationship does not preclude insider status.[126]  Plaintiff asserts that Defendants admit to a negative relationship with the Debtor, whom regardless of culpability was elderly, after several years of litigation in both state and federal court, culminating in a settlement agreement whereby the Debtor ceded any interest in the Chapman Family Trust.[127] Plaintiff states that "[s]uch a transaction can easily and plausibly be viewed not as an arms-length

---

[119] ECF No. 5.
[120] *Matter of Holloway*, 955 F.2d at 1008.
[121] *Williams v. Houston Plants & Garden World, Inc*., 508 B.R. 19, 32 (S.D. Tex. 2014) (*citing* BLACK'S LAW DICTIONARY 1535 (8th ed. 2004)).
[122] *In re Olmos Equip., Inc*., 601 B.R. 412, 420 (Bankr. W.D. Tex. 2019).
[123] ECF No. 5.
[124] *Id.*
[125] *Id.*
[126] ECF No. 9.
[127] *Id.*

transaction, but an arm-twisting one that warrants heightened scrutiny and non-statutory insider status."[128]  In support of her position, Plaintiff cites to *In re Tanner* where the hostile relationship between debtor and former domestic partner was sufficient to warrant additional scrutiny and determination that pre-bankruptcy business was not conducted as arm's length.

When considering a motion to dismiss under Rule 12(b)(6), the Court must assess the legal feasibility of the complaint, not weigh the evidence that might be offered in its support.[129]  Although this Court will not strain to find inferences favorable to Plaintiff, the facts need only be sufficient for an inference to be drawn that the elements of the claim exist.[130]  In *Matter of Holloway*, a case cited to by Plaintiff in her response, the Fifth Circuit examined a case in which the court determined that an ex-wife was not an insider as follows:

> The negotiations between the Debtor and [ex-wife] were adversarial in nature. In fact, [ex-wife] had previously pursued the Debtor in court to get child support payments and both parties had retained counsel to represent their interests. Thus, it is clear that the Debtor was not volunteering payment on his child support obligation. These factors suggest that the transaction was, indeed, arms-length. Accordingly, we conclude that the trial court correctly determined that [ex-wife] did not exert the necessary degree of control or influence to render her an insider.

As demonstrated by the procedural history of this case, it is undisputed that Debtor and Defendants were represented by counsel prior to and upon execution of the Settlement Agreement. The Settlement itself states:

> Advice of Counsel. Each of the Parties acknowledges and warrants that it has consulted with its attorneys regarding the terms of this Agreement, and that they have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise, settlement and waiver of any and all claims as set forth herein.[131]

---

[128] *Id*. at 5.

[129] *Koppel v. 4987 Corp.,* 167 F.3d 125, 133 (2d Cir. 1999).

[130] *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.,* 365 F.3d at 361 (internal quotations omitted); *see Harris v. Fidelity Nat'l Info. Serv* (*In re Harris*), Nos. 03-44826, 08-3014, 2008 Bankr. LEXIS 1072 at *11 (Bankr. S.D. Tex. Apr. 4, 2008) (citing *to Walker v. South Cent. Bell Tel. Co*., 904 F2d at 277).

[131] ECF No. 15 at 183.

Further, when Debtor filed his Motion to Clarify and Alternatively to Partially Modify the Order of Dismissal with Prejudice to Refiling for 365 days in its First Bankruptcy, Debtor's motion stated that "[t]he litigation in which the Debtor was previously embroiled has fully settled, as of several weeks ago . . . said litigation is now resolved / fully settled."[132]   However, despite representations by counsel, there are key differences between the discussion in *Matter of Holloway* and the facts before this Court.   Importantly, (i) the Settlement Agreement between Defendants and Debtor was entirely outside the purview of this Court;[133]   (ii) the parties entered into the Settlement Agreement after the case was remanded back to state court; and (iii) by the time Debtor returned to this Court, the Settlement Agreement was already made.   As a result, this Court lacks knowledge of how the Settlement Agreement came to be and familiarity with how the parties came to terms.   When assessing the legal feasibility of the Amended Complaint, the facts pled by Plaintiff are sufficient for an inference to be drawn that the Settlement Agreement between Defendants and Debtor was not at arm's length.   As such, because the two factors for non-statutory insider status are satisfied at the Rule 12(b)(6) stage, Plaintiff will be permitted to proceed to discovery. Accordingly, the Court denies Defendants' Motion to Dismiss with respect to Counts I and V based on the argument that Defendants are not insiders.

**2.   Whether the Complaint pleads facts to support the existence of an antecedent debt**

Defendants contend in their supplement to the Motion to Dismiss that because the Amended Complaint fails to state any facts supporting the bare allegation of the existence of an antecedent debt, Counts I and V must be dismissed.[134]   Both § 547 (Count I) and Texas Business & Commerce Code § 24.006(b) (Count V) include as a required element the existence of an

---

[132] Case No. 18-70101, ECF No. 73.
[133] ECF No. 1 ¶ 22.
[134] ECF No. 16.

antecedent debt.[135]  Defendants assert that although the Complaint does state that an antecedent

debt existed, no *facts* are pled to support those bald allegations.[136]

In response, Plaintiff points to the language of the Settlement attached to her Amended

Complaint which sets forth:

- Plaintiffs hereby release Defendant from all liability in relation to the judgment obtained against him in Bankruptcy Court in the amount of $20,000.
- Plaintiffs hereby release Defendant from all liability arising from the District Court's Order compelling Defendant to reimburse the Chapman Family Trust for the 2017 property taxes in the amount of $92,000.
- Plaintiffs hereby release Defendant from all liability arising from the District Court's Order compelling Defendant to reimburse the Chapman Family Trust for the security deposits in the amount of $23,810.[137]

Plaintiff asserts that it is not a tenable argument that a pre-existing judgment does not amount to

an "antecedent debt."  Therefore, Plaintiff submits that sufficient facts have been pled as to the

existence of an antecedent debt.

Here, in construing the facts in a light most favorable to Plaintiff, she sufficiently pleads

the existence of an antecedent debt under § 547 and Texas Business & Commerce Code §

24.006(b).  While Defendants argue that no "facts" are pled, Plaintiff states in each Count I and V

that "[t]he factual allegations set forth herein are re-alleged and incorporated herein."[138]  The fac-

tual allegations in the Amended Complaint reference the "Settlement Agreement."[139]  In evaluat-

ing a motion to dismiss,  this Court may consider the documents appended to the Amended Com-

plaint.[140]  As pointed out by Plaintiff, the language in the Settlement refers to Debtor's relinquish-

ment  of  a  Bankruptcy  Court  judgment  of  $20,000,  a  District  Court  Order  compelling

---

[135] 11 U.S.C. § 547(b)(2)("for or on account of an antecedent debt owed by the debtor before such transfer was made");
Tex. Bus. & Com. Code Ann. § 24.006 (". . . if the transfer was made to an insider for an antecedent debt . . .").
[136] *Id.*
[137] ECF No. 15 at 182.
[138] *Id.* at 5, 7.
[139] *Id.*
[140] *Hertz Corp. v. City of New York,* 1 F.3d at 125.

reimbursement of $92,000 in property taxes, and another order from the District Court compelling Debtor to reimburse $23,810 in security deposits to the Chapman Family Trust.  Taking the facts pled as true, this Court finds that Plaintiff sufficiently pled the existence of an antecedent debt under § 547 and Texas Business & Commerce Code § 24.006(b).  Accordingly, the Court denies Defendants' Motion to Dismiss with respect to Counts I and V based on the argument that the Amended Complaint fails to state any facts supporting the bare allegation of the existence of an antecedent debt.

### 3.  Whether the transfer diminished or depleted Debtor's bankruptcy estate

With respect to Count I, Defendants assert that "[b]cause Debtor's right to receive income from the Chapman Family Trust was hotly disputed in litigation involving allegations of Debtor's past mismanagement and excessive and improper withdrawals from the Chapman Family Trust, and because Debtor's right as trustee to invade the Chapman Family Trust principal was limited to 'funds for his [] proper care support or maintenance,' Plaintiff cannot prove by a preponderance of evidence that the Chapman Family Trust received more than it would have received or that the bankruptcy estate was diminished by the alleged transfer."[141]  Defendants assert that Count I should be dismissed because Debtor had no rights to the Chapman Family Trust property beyond funds for his care and support and that the spendthrift provision of the Chapman Family Trust prevents attachment of creditor rights.

As delineated in § 547(b)(5), for a transfer to be preferential, the creditor must receive more from the transfer than it would have received if the case had proceeded under chapter 7, the transfer had not been made, and the creditor had received payment of its debt to the extent provided under the bankruptcy laws.[142]  In addition, the alleged preferential transfer must not diminish or deplete

---

[141] *Id.*
[142] 11 U.S.C. 547(b)(5).

the debtor's estate.[143]   As stated by the Fifth Circuit, "[t]his is because the preferential transfer statute was designed, in part, 'to prevent a transfer to one creditor that would diminish the estate of the debtor that otherwise would be available for distribution to all.'"[144]   The gravamen of Defendants argument is an attack on this latter requirement.   In their Motion to Dismiss, Defendants argue that Debtor's right as trustee to invade the Chapman Family Trust principal was limited to "funds for his [] proper care support or maintenance."[145] Defendants assert this provision specifically does not include the payment of preexisting debts to third parties, which would bar Plaintiff for any recovery under this provision.   And the Chapman Family Trust includes a spendthrift clause.[146]   Further, as to the Debtor's rights to control Chapman Family Trust property as trustee, Defendants state that "property held in trust does not constitute 'property of the estate.'"[147]   In essence, Defendants conclude that the Amended Complaint and its attachments show that Plaintiff cannot demonstrate that any assets (in light of Debtor's hotly disputed income rights and trusteeship) would have resulted in bankruptcy estate assets absent the Settlement Agreement.[148]

Upon examination of the Amended Complaint, Plaintiff wholly ignores the Fifth Circuit's requirement that the alleged preferential transfer must diminish or deplete the debtor's estate.   With respect to Count I, Plaintiff listed only the elements set forth under § 547(b)(5): "the "Transfer enabled Defendants to receive more than what they would have if (i) the case were a case under Chapter 7 of the Bankruptcy Code; (ii) the Transfer had not been made; and (iii) Defendants received payment of the debt owed pursuant to the provisions of the Bankruptcy Code."[149]   Plaintiff does not plead *how* the Settlement Agreement diminished or depleted Debtor's estate.   While

---

[143] *In re N.A. Flash Found. Inc*., 298 F. App'x 355, 359 (5th Cir. 2008).

[144] *Id.*

[145] ECF No. 5 at 2 (citing Complaint, Ex. B (ecf p.16 of 254)).

[146] *Id.* (citing to ECF No. 15, Ex. B).

[147] *Id.*

[148] *Id*.

[149] ECF No 15 at 6.

factual allegations and analysis of the issue are included in her responsive brief, the Court will not impose arguments on to the Complaint itself, for allegations missing from the Complaint fail to provide Defendants fair notice of the claim and the grounds for it.

Therefore, Plaintiff's Count I with respect to the requirement that the alleged preferential transfer diminished or depleted the debtor's estate is insufficient as pled, and Plaintiff must re-plead to establish this requirement. Plaintiff requested leave to amend this section in her responsive brief.[150] The Court determines that because Plaintiff pled a cause of action setting forth the elements of § 547 but neglected to include a requirement imposed by the Fifth Circuit, justice requires permitting her to amend. As such, provided that the requirements under Rule 15 have been met as discussed earlier, this Court grants Plaintiff leave to amend Count I with respect to the requirement that the alleged preferential transfer diminished or depleted the debtor's estate, failure of which will result in the automatic dismissal of Count I.

### 4.  Whether the Debtor Received Reasonably Equivalent Value as a Matter of Law

Lastly, speaking to Counts II and IV, Defendants assert that "Plaintiff's §548 and the other TUFTA claims also all fail because the alleged fraudulent transfer complained of was in connection with a litigation settlement and so Plaintiff cannot satisfy her burden to show that Debtor received less than equivalent value, as a release of corresponding legal obligations in exchange for a transfer always constitutes reasonably equivalent value, and, in addition, Debtor also received other undisputedly valuable consideration."[151]

Section 548 allows a trustee to recover property if a fraudulent transfer was made to the debtor *or* if the debtor received less than a reasonably equivalent value in exchange for such

---

[150] ECF No. 9.

[151] *Id.*

transfer or obligation.[152]  The Texas Business & Commerce Code § 24.006(a) states that "[a] transfer made or obligation incurred by a debtor is fraudulent . . . if the debtor made the transfer or incurred the obligation *without receiving a reasonably equivalent value* in exchange for the transfer . . . ."[153]  In the Fifth Circuit, to measure reasonably equivalent value, the consideration given for a transfer is judged from the standpoint of creditors.[154]  "The proper focus is on the net effect of the transfers on the debtor's estate, [and] the funds available to the unsecured creditors."[155]  "Reasonably equivalent value" means that "the debtor has received value that is substantially comparable to the worth of the transferred property."[156]

 In support of their position, Defendants assert that Debtor's rights had no value at all, and had three judgments against him as proof, a $20,000 judgment of this court, and state court orders compelling him to pay the Chapman Family Trust $92,000 and $23,810.[157]  Defendants allege that Debtor also received a "substantial and valuable benefit" due to avoiding "protracted and expensive litigation;"[158] and dismissal of the  Defendants' lawsuit against the Debtor.[159]  Lastly, Defendants note that Debtor received guaranteed payments of $4,500 a month for life,[160] which stream of payments were a priority obligation of the Chapman Family Trust before all its other obligations, and were also personally guaranteed by Defendants.[161]

In response, Plaintiff asserts that the Mall property conveyed to the Chapman Family Trust is worth millions of dollars.  Moreover, as alleged in the State Court Lawsuit attached to Plaintiff's

---

[152] 11 U.S.C. § 548(a)(1)(B) (requires proof that the debtor received less than a reasonably equivalent value in exchange for the transfer).
[153] *In re TransTexas Gas Corp.*, 597 F.3d 298, 306 (5th Cir. 2010).
[154] *Id.*
[155] *Id.*
[156] *Id.*
[157] ECF No. 1, Ex H at 182.
[158] *Id.* at 180.
[159] *Id.* at 182.
[160] *Id.* at ¶ 22.
[161] *Id.* at 181.

Complaint, the Defendants allege: (a) the Chapman Family Trust generated approximately $1.372 million in income from 2004 to 2014 and (b) the Debtor purportedly directed approximately $2.5 million in funds to himself during the same time.  Plaintiff argues that "[g]iven the foregoing allegations taken as true within the context of Rule 12(b)(6) as contained within the Plaintiff's Amended Complaint, it is entirely plausible that the Debtor did not receive reasonably equivalent value in return for relinquishment of his interest in the Chapman  Family Trust and its property, given the multi-million dollar value of the income stream  and/or value of the underlying property of the Chapman Family Trust."

Upon review of the Amended Complaint, Plaintiff brings claims under § 548 and Texas Business & Commerce Code § 24.006(a) in Counts II and IV, respectively.  Plaintiff's Amended Complaint plainly states that "Debtor received less than reasonably equivalent value for the Transfer."  While she does state that "factual allegations set forth herein are re-alleged and incorporated herein," the factual allegations to support that contention are absent.

Plaintiff's reference to the Chapman Family Trust being worth "millions of dollars" in her response is entirely missing from the Amended Complaint.  Plaintiff fails to compare the value Debtor received from the Settlement Agreement to any value received prior to the Settlement Agreement.  Plaintiff does not plead any facts with regard to the income generated by the Chapman Family Trust.  Although Plaintiff points the Court to allegations made in the State Court Lawsuit attached to the Amended Complaint in her response, this Court will not hunt down all of the facts hidden in the attachments as it is Plaintiff's responsibility to put the Defendants on proper notice as to *how* the Debtor did not receive reasonably equivalent value in return for relinquishment of his interest in the Chapman Family Trust.  Plaintiff fails to state sufficient facts to support claims under § 548 and Texas Business & Commerce Code § 24.006(a) with respect to reasonably

equivalent value.  Accordingly, provided that the requirements under Rule 15 have been met, the

Court grants Plaintiff leave to re-plead Counts II and IV to state facts to support claims under §

548 and Texas Business & Commerce Code § 24.006(a) with respect to reasonably equivalent

value, failure of which will result in dismissal of Counts II and IV.

### IV.    CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simul-

taneously herewith.


SIGNED March 5, 2021


_____
Eduardo Rodríguez
United States Bankruptcy Judge